UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SAUNDERS VENTURES, INC. d/b/a
SAUNDERS & ASSOCIATES,

                        Plaintiffs,                    MEMORANDUM & ORDER

   -against-                               CV 15-6925 (JMA) (ARL)

MEG SALEM a/k/a MARGARET SALEM,

                        Defendant,

   -against-

ANDREW SAUNDERS.

                        Third-Party Defendant.
----------------------------------------------------------------------X
APPEARANCES

STROOCK & STROOCK & LAVAN LLP
Attorneys for Plaintiff and Third-Party Defendant
180 Maiden Lane
New York, New York 10038
By: Claude G. Szyfer, Esq.
     Julie G. Matos, Esq.

ROBERT L. FOLKS & ASSOCIATES, LLP
Attorneys for Defendants
538 Broadhollow Road, Suite 301
Melville, New York 11747
By: Robert L. Folks, Esq.

**AZRACK**, District Judge:

## I. BACKGROUND

      This action was tried before a jury by the late Senior United States District Judge Leonard

D. Wexler. After hearing nearly two dozen witnesses, the jury returned a verdict in favor of plaintiff

Saunders Ventures, Inc. d/b/a Saunders & Associates ("S&A") on its breach of contract and

Computer Fraud and Abuse Act ("CFAA") claims, and against defendant Meg Salem a/k/a Margaret Salem ("Salem") on her breach of contract counterclaim against S&A and her defamation counterclaim against S&A and third-party defendant Andrew Saunders ("Saunders"). Following the entry of judgment, Salem filed a motion under Federal Rule of Civil Procedure ("FRCP") 50(b), seeking judgment as a matter of law against S&A on S&A's breach of contract and CFAA claims and in her favor on her breach of contract and defamation counterclaims, and, alternatively, under FRCP 59 for a new trial. *See* Docket Entry 213. S&A and Saunders opposed the motion. The action was then reassigned to me. For the reason below, the motion is GRANTED in part and DENIED in part.

## II. DISCUSSION

A. Renewed Motion for Judgment as a Matter of Law

    1. FRCP 50(b) Standard

FRCP 50(b) allows a party to "renew" a motion for judgment as a matter of law after an unfavorable verdict. *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001). Before filing a "renewed" motion, the "party must . . . fulfill the procedural prerequisite of moving for judgment as a matter of law before the case is submitted to the jury." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 287 F. Supp. 2d 163, 168 (N.D.N.Y. 2018). In addition, the renewed motion is "limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]; the movant is not permitted to add new grounds after trial." *Tolbert,* 242 F.3d at 70 (internal quotation marks omitted); *see also Utica Mut. Ins.*, 287 F. Supp. 2d at 168 ("[A] party may only make a post-judgment Rule 50(b) motion based on grounds specifically raised at the close of evidence."); *Abel v. Town Sports Int'l, LLC*, No. 09-CV-10388, 2012 WL 6720919, at *4 (S.D.N.Y.

Dec. 18, 2012) ("Given that Defendant now bases its post-trial argument for judgment as a matter of law on grounds not raised in its Rule 50(a) motion, the post-trial motion under Rule 50(b) is fatally defective.").

On a motion for judgment as a matter of law, "a district court must consider the evidence in the light most favorable to the non-movant and draw all reasonable inferences the jury could have drawn." *Cweklinsky v. Mobil Chem. Co.*, 364 F.3d 68, 75 (2d Cir. 2004). "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence . . . is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). A district court "may set aside a verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where the evidence overwhelmingly compels a different verdict." *Cweklinsky*, 364 F.3d at 75 (internal quotation marks omitted). In evaluating the motion, the " 'court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.' " *Tolbert*, 242 F.3d at 70 (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988)).

   2. S&A's CFAA Claims

S&A prevailed on two claims under the CFAA, one for violation of § 1030(a)(4) and the other for violation of § 1030(a)(2)(C). Salem challenges both of these claims.

      a. "Intent to Defraud" Under § 1030(a)(4)

As for S&A's CFAA claim under § 1030(a)(4), that provision is violated by a person who

> knowingly and with intent to defraud, accesses a computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of

3

>     the use of the computer and the value of such use is not more than
>     $5,000 in any 1-year period.

18 U.S.C. § 1030(a)(4). Salem argues that there is no evidence of her "intent to defraud" S&A, as required under § 1030(a)(4), when she entered the RealNet Database. To the contrary, there was sufficient evidence in the record demonstrating that Salem obtained and then utilized the credentials of an unwitting S&A employee, Anna Alexopoulos ("Alexopoulos"), to gain unauthorized access to the RealNet Database two weeks after the revocation of Salem's own credentials following her resignation from S&A and her move to a competitor, Compass Hamptons LLC. In this respect, Jessica Grainger-Rozzi ("Grainger-Rozzi"), a former S&A marketing employee and Salem's friend, testified that on November 17, 2015 she texted Alexopoulos' credentials to Salem. Trial Transcript ("Tr.") 82. Salem used those credentials to access the RealNet Database that day. Tr. 474-75. That information was confirmed by the investigation of K2 Intelligence ("K2"), a cyber-security firm retained by S&A following the unauthorized access of its RealNet Database on November 17, 2015, and by the steps Salem took to eliminate evidence of her November 17, 2015 unauthorized access. Tr. 45-49; 82-83. Salem's steps to cover her tracks also provide evidence of her intent to defraud S&A. For instance, the jury heard testimony that Salem asked Grainger-Rozzi to delete the text message in which Grainger-Rozzi provided her Alexopoulos' credentials. Tr. 83. The jury also heard that Salem sounded "[p]anicked" after she inadvertently copied Alexopoulos on an email from the RealNet Database that was meant only for Salem's personal email address. Tr. 82-83. Salem asked Grainger-Rozzi if there was a "way to recall the email" or if Grainger-Rozzi "could reach out to [Alexopoulos] and have her ignore it." Tr. 82. To the extent that Salem claims that she accessed the RealNet Database for a new place to live, her testimony was also undermined by evidence of the nature and quantity of the listings (over 600) she sent to her personal email address. Overall, the

4

evidence was sufficient for a reasonable jury to find that Salem violated § 1030(a)(4) by accessing a computer knowingly and with "intent to defraud."

### b. "Without Authorization" Under § 1030(a)(2)(C)

As for S&A's CFAA claim under § 1030(a)(2)(C), that provision is violated by a person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Salem argues that the evidence overwhelmingly established that her November 17, 2015 access into the RealNet Database was authorized. To the contrary, there was sufficient evidence in the record demonstrating that Salem's access was not authorized. *See United States v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016). In *Nosal*, a former employee accessed his former employer's computer system, after the company revoked his computer access credentials, by using the credentials of a current employee. *Id.* at 1029. The Ninth Circuit construed the term "without authorization" as an "unambiguous, non-technical term that, given its plain and ordinary meaning, means accessing a protected computer without permission." *Id.* at 1028. As the *Nosal* court reasoned, "[t]his definition has a simple corollary: once authorization to access a computer has been affirmatively revoked, the user cannot sidestep the statute by going through the back door and accessing the computer through a third party. Unequivocal revocation of computer access closes both the front door and the back door." *Id.* Salem's credentials to the RealNet Database were revoked on the day she resigned from S&A, November 3, 2015. Tr. 190-91. Once her credentials were revoked, Salem's access to the RealNet Database without S&A's permission was "without authorization" under the CFAA. *See Nosal*, 844 F.3d at 1028. Salem asserts that the record demonstrates that S&A had a "clear policy" of sharing credentials. *See* Meg Salem's Memorandum of Law in Support of Motion for Judgment as a Matter

of Law Pursuant to Rule 50(b) and for New Trial Pursuant to Rule 59 ("Def.'s Br."), at 3. That credentials were shared internally amongst a small group of S&A's marketing and administrative employees did not establish a "clear policy" of sharing credentials with, and permitting access to, former employees. Tr. 76-77, 98-99. Overall, the evidence was sufficient for a reasonable jury to find that Salem violated § 1030(a)(2)(C) by accessing a computer "without authorization."

### c. "Loss" Under the CFAA

Salem also challenges the sufficiency of the CFAA claims on the grounds that S&A failed to prove that it suffered the required $5,000 of "loss" within the meaning of the CFAA. As the jury was charged, § 1030(e)(11) of the CFAA defines "loss" to mean the "reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Such "loss" includes costs incurred to " 'identify evidence of [a] breach, assess any damage it may have caused, and determine whether any remedial measures were needed to resecure the network.' " *Millennium TGA, Inc. v. Leon*, No. 12-CV-1360, 2013 WL 5719079, at *16 (E.D.N.Y. Oct. 18, 2013) (alteration in original).

To support its claimed loss, S&A relied primarily on the testimony of Vincent D'Agostino ("D'Agostino") of K2 and on K2's various invoices for services rendered in its investigation of the unauthorized access of November 17, 2015. *See* Tr. 30-72; Pl.'s Ex. 308. Salem broadly challenges S&A's claimed losses, arguing that none of the charges invoiced to S&A constitute "loss" within the meaning of the CFAA because the "entire investigation was superfluous and outside the scope of the statute." Meg Salem's Reply Brief in Further Support of Motion for Judgment as a Matter

6

of Law Pursuant to Rule 50(b) and for New Trial Pursuant to Rule 59 ("Def.'s Reply Br."), at 7 n.2. Salem also narrowly challenges specific line-items on K2's invoices as nonrecoverable costs under the CFAA.

As for Salem's broad-based challenge, the Court finds that the evidence, particularly D'Agostino's testimony, was sufficient for the jury to find that K2's investigation into the scope of the intrusion into the RealNet Database and an assessment of any damage thereto was not "superfluous and outside the scope of the statute" and resulted in recoverable loss exceeding $5,000. As for Salem's challenge to specific costs, the Court observes that the January 15, 2016 invoice totaled $13,299.60, the same amount the jury awarded S&A for its "loss." *See* Jury Verdict, at 3 (Docket Entry 209). Salem initially complains that four items, totaling $1,890, on the January 15, 2016 invoice are not recoverable because they were "for litigation support and consultation in the settlement of claims against Compass Hamptons LLC and its affiliate Urban Compass, Inc.—costs not related to any response, damage assessment or restoration of data." Def.'s Br. at 6-7. S&A does not specifically refute Salem's argument as to these four charges. Instead S&A takes the position that "[e]ven if one deducted the four items . . . , which total merely $1,890.00, S&A more than easily exceeds the $5,000.00 loss threshold under the CFAA." Memorandum of Law in Opposition to Defendant's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and for a New Trial Pursuant to Rule 59, at 12 n.7. Given that S&A does not dispute that these four items fall outside the scope of recoverable costs, the jury's verdict in favor of S&A on the CFAA claims should be reduced by $1,890.

Salem also challenges a $2,250 charge on the January 15, 2016 invoice for a WiFi survey of Salem's residence. Salem argues that the charge for the survey is not a recoverable cost because

7

the survey "was not only superfluous . . . but a mere exercise in locating and collecting information about Ms. Salem's residence and access to the internet therein." Def.'s Br. at 7. According to Salem, the "Eastern District has clarified that costs associated with 'locating and collecting information about the hacker' do not fall within the [CFAA]." *Id.* at 6 (quoting *Millenium*, 2013 WL 5719079, at *18). Even if costs of "locating and collecting information about the hacker" are not recoverable, D'Agostino's testimony about the need to conduct the WiFi survey–to determine whether the WiFi in Salem's home was secure and encrypted–was sufficient for a reasonable jury to find that the survey was a recoverable loss and not merely for "locating and collecting information about the hacker"–Salem. *See* Tr. 55-56, 67-70.

Lastly, Salem complains about $1,232.50 in charges for services rendered on January 29, 2016. *See* Def.'s Br. at 7. However, that amount is reflected on a March 23, 2016 invoice and concerns charges that were not included on the January 15, 2016 invoice, which charged for services rendered from November 22, 2015 through December 18, 2015. Thus, the $1,232,50 charge was not included in the jury award.

Accordingly, the Court grants Salem's motion for judgment as a matter of law as to S&A's CFAA claims only to the extent that the jury's verdict on these claims is reduced by $1,890. The motion is otherwise denied as to S&A's CFAA claims because the evidence is sufficient for a reasonable jury to find that S&A suffered more than $5,000 of "loss."

3. <u>S&A's Breach of Contract Claim</u>

S&A asserted a breach of contract claim against Salem, claiming that Salem violated her "Independent Contractor Agreement" with S&A. S&A prevailed on its breach of contract claim, for which it requested and the jury awarded nominal damages of $1. Salem argues that there is a

8

"complete lack of evidence" to support S&A's breach of contract claim "such that the jury must have relied on sheer conjecture." Def.'s Br. at 7. To the contrary, the evidence was sufficient for a reasonable jury to determine that Salem breached the Independent Contractor Agreement by faithless and disloyal actions before or upon her resignation from S&A on November 3, 2015. Such evidence included, *inter alia*, testimony by Salem and her former colleagues Vanessa Bogan and Jesse Spooner showing that Salem emailed to herself thousands of S&A listings without her name on them; created a backup of her S&A email account and an email forwarding rule before leaving S&A to allow her S&A email account to be forward to her personal email account; and took confidential S&A information and documents, including a marketing plan and builder referral agreement subsequently given to Compass. *See* Tr. 106-08, 315-17, 519-25.

   4. Salem's Counterclaims

Salem asserted a breach of contract counterclaim against S&A, claiming that S&A breached the "Independent Contractor Agreement" by failing to pay her commissions. In addition, Salem asserted a defamation claim against S&A and Saunders for alleged defamatory statements. Salem seeks judgment as a matter of law on these counterclaims, having received unfavorable verdicts from the jury. She maintains that the evidence overwhelmingly shows that she could not have breached the Independent Contractor Agreement, *see* Def.'s Br. at 7-15, and that she was defamed by statements published on line and in print articles, *see id.* at 15-18; Def.'s Reply Br. at 13. In response, S&A and Saunders argue that Salem's motion is procedurally barred because she failed to move for judgment as a matter of law under FRCP 50(a) on these counterclaims, having moved only on S&A's breach of contract and CFAA claims, *see* Tr. 713-14. Salem responds that her post-verdict motion for judgment as a matter of law on her breach of contract counterclaim is not

9

procedurally barred. She argues that her pre-verdict motion constituted a motion on *both* S&A's breach of contract claim and her breach of contract counterclaim because the "competing causes of action were inextricably intertwined." Def.'s Reply Br. at 1. She also argues that the Court should consider her motion as to these counterclaims to "prevent manifest injustice." *Id.* at 1-2 (citing *Galdieri-Ambrosini*, 136 F.3d at 287).

As for the defamation counterclaim, because Salem clearly failed to move under FRCP 50(a) for judgment as a matter of law on this counterclaim, she is precluded from doing so now under FRCP 50(b). Even assuming that the motion is not procedurally barred in this respect, the motion must be denied. Contrary to Salem's contention, the evidence did not overwhelmingly show that she was defamed. To the contrary, the jury reasonably could have concluded that S&A and Saunders did not defame her by statements published on line or in print articles.

As for the breach of contract counterclaim, Salem did not move under FRCP 50(a) for judgment as a matter of law in her favor, precluding her from doing so now under FRCP 50(b). Nevertheless, even assuming that the motion is not procedurally barred as to her counterclaim, the motion must be denied. The evidence was not only sufficient for a reasonable jury to determine that Salem breached the Independent Contractor Agreement, as noted above, but also for a reasonable jury to rule against her on her breach of contract counterclaim—a claim, in her words, "inextricably intertwined" with S&A's breach of contract claim. Indeed, the Court charged the jury, with no objection from Salem, that "[i]f you find that Salem breached the Independent Contractor Agreement and that her breach was material, then [S&A] would be excused from paying her commissions (even if you find that such payment was otherwise required by the contract)."

Accordingly, the motion for judgment as a matter of law is denied as to Salem's breach of contract and defamation counterclaims.

E. Request for a New Trial

Salem alternatively requests a new trial under FRCP 59. A district court may grant a new trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." FRCP 59 (a)(1)(A). As the Second Circuit has explained,

> the standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998). While a district court may independently weigh the evidence on a motion for a new trial, the motion should only be granted if the court is convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003).

Upon consideration of the record, the Court cannot conclude that the jury's verdict constituted a seriously erroneous result or a miscarriage of justice. Finding no reason to disturb the jury's verdict, the alternative request for a new trial is denied.

III. CONCLUSION

For the above reasons, Salem's motion for judgment as a matter of law and, alternatively, for a new trial is GRANTED in part and DENIED in part. The motion is GRANTED to the extent

11

that the jury's verdict in favor of S&A on S&A's CFAA claims is reduced by $1,890, but is otherwise DENIED. The Clerk of Court is directed to enter a modified judgment reducing the amount awarded to S&A on its CFAA claims to $11,409.60, and to close the file.

SO ORDERED.

Dated: Central Islip, New York
      July 27, 2018

                                              _____/s/ (JMA)_____
                                              JOAN M. AZRACK
                                              UNITED STATES DISTRICT JUDGE